# CHARLESTON.

AMHERST COAL CO. v. PROCKTER COAL CO.

Submitted March 14, 1917. Decided March 21, 1917.

(Opinion Filed April 3, 1917).

1. APPEAL AND ERROR—*Motion for Submission—Denial.*

A motion by appellant to submit a pending appeal for decision on the merits, in advance of the date regularly fixed therefor upon the docket of the appellate court, will be denied when based upon affidavits touching the merits of the cause, and made without leave of court or notice to the appellee. (p. 172).

2. SAME—*Motion to Dismiss—Consideration—Statute.*

Though under §26, ch. 135, Barnes' Code, the appellate court may consider the merits of a cause on a motion to dismiss an appeal, the investigation thereof will be extended only far enough to ascertain whether there is involved a question of law or fact that demands a formal and mature inspection of the record as in determining the rights of the parties upon a submission for final hearing of the appeal on the merits of the cause. (p. 177).

Appeal from Circuit Court, Logan County.

Bill for injunction by the Amherst Coal Company against the Prockter Coal Company. Injunction awarded, and from an order dissolving it on the motion of the defendant, plaintiff was awarded an appeal. Motion by appellee to dismiss the appeal, and motion by appellant to submit the cause for a hearing on the merits. *Motions overruled.*

*Brown, Jackson & Knight, Lilly & Shrewsbury* and *Campbell, Brown & Davis,* for appellant.

*Chafin & Bland* and *Holt, Duncan & Holt,* for appellee.

LYNCH, PRESIDENT:

Before us are two motions, one by each of the opposing parties; the first to dismiss the appeal from an interlocutory but under the statute an appealable order of the circuit court dissolving an injunction, the second to submit the cause for a hearing on the merits upon affidavits. Both were made upon the supposition that section 26, chapter 135, Code, authorized that procedure. While that section does grant authority to move to dismiss, reverse or affirm, the right can be exercised only after reasonable notice, with leave previously obtained for that purpose. No leave was asked or granted, and no such notice given, for the motion to submit; and in no event could it be entertained on affidavits only, over the protest and objection of the adversary party, however explicit and competent they may be upon the merits of the case. He can not, in this manner, be deprived of the right to mature his case by the ordinary procedure. Besides, a submission for decision on the merits can not be had except by consent, unless upon compliance with the rules of court in filing briefs either party so far controls as to demand such submission where his adversary is in default. These reasons require the refusal of the motion, and leave open for consideration only the questions arising upon the motion to dismiss the appeal from the order dissolving the injunction awarded by the judges of this court present at the time. This motion was made upon leave first obtained, and upon the notice prescribed, and assignment of grounds therefor, as required by paragraph 1, court rule 8.

This is a controversy between two colliery companies operating under mining leases, each of them on parcels of a large tract of land separately leased by V. B. Browning and others, owners in severalty of adjoining tracts. The Amherst Coal Company is the senior lessee. To it, as assignee of the original lessee, the contract granted that part of the land thereby embraced, lying south of Buffalo creek in Logan county, "for

coal mining and coal coking purposes only'', for a definite term of forty years, and longer upon compliance with certain prescribed conditions not now involved. It also granted unto the lessee as appurtenant to the contract the right to ''the use of sufficient of the surface of said lands for building and other purposes necessary in said operations''. But to preserve to themselves, their heirs and assigns means of access to the railroad of the Chesapeake & Ohio Railway Company south of Buffalo creek, being its Buffalo branch line, to transport to market the coal mined from that part of the land located north of that creek, the lessors reserved the right to connect with the railroad on the north side thereof but on the south side of Buffalo creek by switches or sidings, with the significant qualification that ''said switches or sidings are not to interfere with the switches or sidings of the lessee herein.''

The Amherst Coal Company, as authorized by that contract, entered upon the leased premises at the lower end of the leasehold, as determined by the flow of the water in Buffalo creek, erected and installed its coal mining and shipping appliances and facilities, including railroad connections by switches and sidings, for the purpose of opening and marketing the coal under the land leased to it, and since has continued to operate the seams of coal found under the land in that locality, known as the ''Island Creek'', ''Thacker'' and ''Eagle'' seams, the first two being the upper and the Eagle the lower or deeper seams on each side of the creek. The actual mining operations of the Eagle seam the Amherst Coal Company began to conduct through a 100 acre tract leased by the Virginia-Buffalo Coal Company, it being a friendly or cognate corporation because in part composed of and owned by common shareholders.

After the execution of the lease acquired by the Amherst Coal Company, the same lessors entered into a similar lease contract with the Prockter Coal Company, granting to it the right to enter upon, mine, transport and market the coal found under that part of the tract owned by the lessors on the north side of Buffalo creek; and the Prockter Coal Company likewise entered thereon, and opposite the plant of

the Amherst Coal Company, opened its mine for the production of the coal from the Island Creek and Thacker seams, and thereafter until the institution of this proceeding, and perhaps since, has continued to mine these seams and therefrom market the coal as mined.

These mining operations for the Island Creek and Thacker seams, conducted at the lower end of the tracts so leased, are surface or drift mouth operations, as distinguished from operations through or by means of slopes or shafts, these seams being above while the Eagle seam is below the water level at that end.

Each of these companies, about the same time, conceived the idea that the Eagle seam could at the upper end of the parcels of the original tract embraced by its lease be mined by the drift mouth method, because thereat that seam practically was at water level in Buffalo creek at ordinary stages. Which company actually first considered the feasibility or propriety of a change in the base of its operations for the coal contained within this seam, and determined to effect such change, is a contested fact, although apparently unimportant, because not controlling or conclusive upon the leasehold rights of the contestants. While the Prockter company contends it first inaugurated active proceedings preparatory to the mining of the Eagle seam at the upper end of the land leased to it, the Amherst company contends it first constructed houses at that end for the use and occupancy of its employees there, in contemplation of the installation of a coal mining plant for the more convenient and economical mining of that seam by drift mouth operations therefor. But this is not a case where priority in right depends upon priority in time in the manner of doing the things authorized by these contracts; because each lease discloses and defines what the respective rights and privileges of the lessees are, and, for the purposes of this motion, the leases apparently are free from doubt, uncertainty or ambiguity. The lessees unite in agreeing that the mining of coal by the drift mouth method is more economical to the employer, and less fraught with danger to employees, than mining by the shaft or slope method; but the Prockter Coal Company denies that economy

and safety were the chief inducements for the proposed change by the Amherst Coal Company in the base of its operations, and asserts that the real purpose thereof was to impede the Prockter Coal Company in its operations for the Eagle seam.

Preliminary to such change, or, more accurately to the inauguration of the proceedings for the installation of the appliances and facilities for the successful mining and marketing of the Eagle seam by the drift mouth method at the place designated, the Prockter Coal Company procured from the Chesapeake & Ohio Railway Company a grant or concession for the construction of switching and siding connections with its railroad on the north side thereof but south of Buffalo creek, and permission to use part of the railroad right of way for these purposes, and from its lessors purchased one of the small tracts reserved by them in the lease under which the Amherst Coal Company claims its leasehold rights, the purpose to be served by this purchase being to furnish a site for the erection of a tipple for the mining and marketing the Eagle seam. On this parcel the Prockter Coal Company either has constructed or has in process of construction such a structure as that contemplated when the purchase was effected.

To render these various appliances and facilities available for the uses and purposes intended, it became convenient, if not necessary, as that company contends it was, in crossing Buffalo creek, to construct an elevated tramway from the openings made by it into the Eagle seam on the north side of the creek to the tipple on the south side, and also to cross a portion of the land leased to the Amherst Coal Company, plans therefor being submitted to the latter for its approval. Some correspondence in the nature of compromise propositions or proposals as regards these contemplated improvements, not now necessary to note, was had between the parties. These negotiations having failed of consummation, the Prockter Coal Company determined to undertake, and did undertake, without such consent or approval, to proceed with the construction of these various shipping facilities and appliances, by it deemed necessary or convenient for the ac-

complishment of the purpose, including the tramway, when the Amherst Coal Company presented to the judge of the circuit court of Logan county its bill, averring in detail the facts herein summarized, and from him on November 16, 1916, obtained the injunction prayed for therein to prevent the completion of these improvements, but which process later he dissolved upon motion, and thereafter on an amended but not materially different bill he refused another injunction, which the individual members of this court then present awarded December 12, 1916, subject to the action of the circuit court or the judge thereof in vacation upon motion to dissolve. From the order dissolving it upon the motion of the Prockter Coal Company, a judge of this court in vacation awarded the appeal which the appellee now moves to dismiss.

Against the propriety and allowance of this motion at this stage of the proceeding the Amherst Coal Company protests, and as grounds of objection to the proposed dismissal urges that no impediment or obstruction to the exercise of the rights conferred upon it by the lessors, except as authorized or permitted by the lease, can be placed upon the tract, and that the shipping appliances and facilities contemplated by the Prockter Coal Company and in process of construction for switching and siding connections with the railway company are an unauthorized obstruction, and preclude it from the enjoyment of the rights and privileges so conferred. The chief cause of the complaint so made is that the tramway, elevated as it is, will, when completed as proposed, hinder or prevent operations upon the tract of the Amherst Coal Company, the construction and unobstructed maintenance of which, together with its siding and switch connections with the railroad, are necessary for the mining and shipment of the coal from the Eagle seam at the point contemplated by the plans devised for that purpose. This obstruction arises, it is contended, because, when measured by railroad standards, an engine of sufficient capacity to haul the coal from the tramway of the Amherst Coal Company to the railroad tracks for shipment can not pass under and in no circumstances over the tramway of the Prockter company at the proposed elevation. Whether this tramway

constitutes such an obstruction to the use of the tracks of the Amherst Coal Company is a question as to which the affidavits filed by the parties are in direct conflict. Skillful and experienced engineers in this manner testify, in effect, that the tramway will or will not, according to the interests represented by them, operate as an obstruction against the necessary and proper enjoyment of the rights and privileges conferred upon the Amherst Coal Company.

Which of these contentions is the true one we can not determine, upon the motion to dismiss, so as to preclude further investigation of that subject when the cause is submitted upon its merits. The former rule obtaining in this jurisdiction, as held in *Whyel* v. *Jane Lew Coal Co.,* 67 W. Va. 651, was that if in passing upon a motion to dismiss an appeal it becomes necessary to enter upon an investigation of questions involving the real merits of the cause, or matters exclusively appropriate for consideration upon final submission, or such as require an examination of the whole record, the proper procedure was to deny the motion entirely, or, as sometimes held, to deny it temporarily with leave to renew it upon the submission for final determination upon the appeal, except where such an examination is necessary to ascertain whether the appellate court had jurisdiction to entertain the cause, as held in *Rector* v. *Lipscomb,* 141 U. S. 557. These cases adopted the theory that such a motion had some of the properties or functions of a demurrer, its office being to take advantage of objections apparent on the face of the record. 4 C. J. 592. Or, as sometimes said, the inquiry thereby presented was whether the grounds assigned to support the motion appear from the record so clearly and unmistakably as to leave no room for any reasonable doubt as to the rights of the parties. 4 C. J. 574, 592.

But, as we apprehend, the real object and purpose to be subserved by §26, ch. 135, Barnes' Code, indeed its plain purport and intendment, is to enlarge the scope of the motion to dismiss so as to require such an investigation into the merits as will enable the court to determine whether a question of law or fact is involved that demands a more formal and mature consideration than was deemed necessary under

the former rule.    Otherwise, the statute serves no useful or salutary purpose.    Nevertheless, it does not require the court, in passing upon the motion, to enter fully upon an investigation into the merits of the cause when a partial examination of the record renders obvious that the rights of the parties are such as to exact a more careful scrutiny of the facts on which such rights depend.    This interpretation of the statute, as we conceive its purpose to be, leads to the conclusion to deny the motion made by the appellee, because in passing thereon none of the matters involved can be investigated and determined without treating the cause as if it were presented for final hearing upon the merits.    Its facts are controverted; the affidavits are conflicting; a proper determination of the rights of the parties necessitates a minute and careful inspection of the entire record.    The statute does not purport to intend that such a motion shall operate as a substitute for a submission of the cause for final decision upon the facts proved in support of the conflicting contentions of the adversary parties.    These conclusions warrant, indeed require, a denial of the motion to dismiss, as to grant it would preclude further consideration of other questions that may arise in the cause when finally submitted for hearing upon its merits.          *Motions overruled.*